**In re Arnold SCHLEIN, Debtor.**

**Arnold SCHLEIN, Debtor–In–Possession, Plaintiff,**

**v.**

**Jerome GOLUB, Arlene Golub, Janet Steinberg, RSW, Inc., Federal Mis Limited Partnership, AJA Limited Partnership, Square 369 Limited Partnership, Square 516 Limited Partnership, Square 517 Limited Partnership and Square 372 Limited Partnership, Defendants.**

**Bankruptcy No. 93–14458 SR.
Adv. No. 94–1025.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Feb. 27, 1995.

Kenneth Aaron, Robert B. Eyre, Lawrence J. Koltler, Buchanan Ingersoll P.C., Philadelphia, PA, for debtor.

Douglas Smillie, Clark Ladner Fortenbaugh & Young, Philadelphia, PA, Richard B. Rosenblatt, Bruce Goldstein, Zuckerman, Spaeder, Goldstein, Taylor & Kolker, Washington, DC, for defendants.

Jerome Balka, Balka & Balka, Philadelphia, PA, for Prudential Sav. Bank.

Kevin Callahan, Office Of The U.S. Trustee, Philadelphia PA.

### OPINION

STEPHEN RASLAVICH, Bankruptcy Judge.

### Background and Procedural History.

The instant Chapter 11 case was commenced on July 29, 1993. A review of the docket in the main case reveals that very little of substance transpired in the case from its inception through September 1994, at which time the Office of the United States Trustee filed a Motion seeking dismissal of the case or its conversion to Chapter 7. A hearing with respect to that Motion was held on October 20, 1994. At that time, and in opposition to the U.S. Trustee's Dismissal Motion, counsel for the Debtor appeared and advised the Court that the delay in formulating a reorganization plan for the Debtor was attributable to a complex dispute which existed between the Debtor and certain family members with whom he shared interests in various partnerships. The partnerships in question are the owners of numerous real properties in the Washington D.C. area. It was represented to the Court at the October 20, 1994 hearing that the value of the Debtor's minority interests in the subject partnerships constituted the most significant assets in his case, and that the resolution of the disputes between he and his partners *inter se* was, therefore, the predicate to any successful Chapter 11 reorganization. In response to the Court's inquiries concerning the reasons for the delay in bringing about resolution of the partnership disputes, the Debtor advised that it was his intention to commence an adversary action against his partners, but that his ability to do so had thus far been impeded by his partners' refusal to supply him with documents and other "discovery" type material necessary to prepare his complaint. In the aftermath of this hearing, and in view of the Debtor's representations, the Trustee's Motion to convert or dismiss the Bankruptcy case was held in abeyance, and an Order was entered granting the Debtor's request for relief to conduct certain examinations of his partners, and the partnership entities, under Bankruptcy Rule 2004.

With the foregoing Order in place, a follow-up status hearing in the main bankruptcy case was scheduled for January 5, 1995. Prior to this continued status hearing, specifically on December 30, 1994, the Debtor filed the instant adversary proceeding against certain individual partners and various partnership entities and coupled with that a Motion seeking preliminary injunctive relief. The instant complaint itself does not address directly the Debtor's substantive disputes with his partners.[1] Rather, the instant complaint expresses the Debtor's fears that pending the outcome of those disputes his interests in the

---

1. The Court does note, however, that the anticipated Complaint in this regard was filed by the Debtor on February 9, 1995, and is pending at Adversary No. 95–0062.

partnerships may be irreparably harmed by acts and/or omissions of his partners whom, he alleges, now control the partnership assets. Accordingly, the Debtor here seeks various forms of preliminary and permanent injunctive relief designed to protect him from any interim dissipation of assets. A hearing with respect to the emergency relief sought by the Debtor was scheduled for January 12, 1995, however, at the continued status hearing held in the main bankruptcy case on January 5, 1995, the parties agreed to a continuation of the preliminary injunction hearing until January 26, 1995. In conjunction with that continuance, a temporary restraint on the individual partner and partnership defendants (sometimes hereinafter collectively referred to as the "Defendants") was entered by Bench Order. Generally, the terms of this Bench Order prohibited the individual partner and partnership defendants from making any "out of the ordinary course of business" disbursements relative to the partnership properties pending the January 26, 1995 hearing on the Debtor's request for a preliminary injunction.

On January 25, 1995, prior, that is, to the preliminary injunction hearing, the Debtor delivered to the Court an amended complaint in the instant adversary matter which included a new Count III, wherein the debtor requested, as an alternative to the various equitable remedies sought in Counts I and II of the original and amended Complaints, the following relief:

95. As an alternative remedy, Debtor respectfully requests that this Court appoint a federal receiver to oversee the administration of the Partnership Defendants with power to collect all debts of the Partnership Defendants, to administer, oversee and convert the Partnership assets for the benefit of the Debtor and for the Individual Defendants and for the creditors of the Partnership Defendants.

Later the same day, Debtor's counsel hand delivered to the Court a copy of another pleading entitled "Verified Petition For Appointment of Receiver for Family Partnerships" which was allegedly filed on January 24, 1995 in the Circuit Court for Arlington County, Virginia at Chancery No. 95–58 by Arlene Golub and Janet Steinberg, two of the individual partner defendants in the instant action. At paragraph 32 of the foregoing petition, the State Court petitioners aver, as follows:

32. A Receiver is necessary in order to preserve the value of the Family Partnerships, to pay outstanding obligations of the Family Partnerships, to collect income from the Family Partnerships and to market and sell Family Partnership real property since the Petitioners and Arnold Schlein have irreconcilable differences and cannot break deadlocks to reach decisions under the Partnership Agreements. Accordingly, the Petitioners are entitled to the appointment of a Receiver pursuant to Va.Code Ann. § 8.01–592.

In view of the apparent consensus of all parties over the need for a receiver, this became the first subject of consideration at the hearing of January 26, 1995. In this regard, both sides at the hearing did, in fact, confirm their agreement as to the need for appointment of a receiver. The parties differed, however, in one important respect. The Debtor would have the receiver appointed subject to the supervision of this Court, while the partner and partnership defendants maintain that the receiver should be appointed and supervised by the Virginia State Court. In furtherance of their respective positions on this issue, the parties have advanced various substantive and procedural arguments which bear on the authority of this Court to appoint the receiver and, if such authority exists, the propriety of the appointment of a receiver by this Court. At the conclusion of the hearing, it was agreed that because the appointment of a receiver was a threshold and potentially dispositive issue, *vis a vis,* the injunctive relief requested by the Debtor, the receivership question would be resolved by the Court prior to the taking of an evidentiary record. A follow-up Order continuing the temporary restraints against the partner and partnership defendants pending disposition of the receivership question was thereupon entered by the Court. Having fully considered the pleadings and the arguments of the parties, and for the reasons expressed below, the Court has concluded that a receiver appointed and super-

vised by this Court is the correct course of action.

### Discussion.

■ The jurisdiction question presented by the individual partner and partnership defendants is admittedly a close one. At the outset the Court is quick to conclude that, generally, the appointment of a receiver is a remedy which lies within the ambit of the Court's authority, particularly where, as here, the threat of asset dissipation is raised. *In re Memorial Estates, Inc.*, 797 F.2d 516 (7th Cir.1986). The authority arises under the Court's equitable powers as set forth in 11 U.S.C. § 105(a). *Edwards v. Armstrong World Indus. Inc.*, 6 F.3d 312, 320 (5th Cir. 1993).[2] The instant defendants do not seem to dispute this conclusion. Instead, they focus on the fact that the partnerships themselves are not in bankruptcy and that the appointment of a receiver to take over the affairs of these "non-debtors" exceeds the Court's jurisdictional authority, even under 11 U.S.C. § 105(a). In this regard, the Defendants rely on *In re Berlin*, 151 B.R. 719 (Bankr.W.D.Pa.1993) and *In re Wallen*, 43 B.R. 408 (Bankr.D.Idaho 1984). Those decisions are supportive of the Defendant's proposition, however, this Court concludes that the unique circumstances which exist here render those decisions, neither of which is controlling in this district, inapposite.

■ The focus in *In re Berlin* and *In re Wallen* was upon the general rule that upon the bankruptcy of a partner the interest of the debtor partner in the underlying partnership becomes estate property. However, *assets* held by the partnership itself are not estate property. The foregoing general rule is unquestionably correct. Here however the request, as framed by the parties, is for a receiver not simply to take over and manage the *assets* of the partnership, but for a receiver to take over, manage and basically "wind-up" the affairs of the partnership and the relationship of the partners *inter se*. The focus, in other words, is upon the entities *qua* entities not merely the underlying assets of the entities. While in another con-

text that might prove to be a distinction without a difference, it does not strike this Court that way herein. Resolution of the issues which attend the Debtor's interest in the subject partnerships is the apparent gravamen of this bankruptcy case. While the court notes that the Debtor is a *minority* interest holder in the partnership entities, it is utterly unrealistic to posit that resolution of the disputes which exist between he and his partners can occur without consequence to him in some other forum. Because of their pervasive impact upon his bankruptcy case, every major or "out of the ordinary course of business" decision relative to the partnerships could potentially involve duplicative litigation in this Court. As the scope of the parties' disputes and their collective request for the appointment of a receiver apparently transcends the underlying assets and involves the debtors partnership *interests* in such a direct and substantial way, it strikes this Court as appropriate that jurisdiction over the resolution of the parties' disputes be exercised in the Bankruptcy Court, and that authority to appoint and supervise the receiver who will operate the partnership entities pending the litigation which has already been initiated in this Court to accomplish that resolution exists under 11 U.S.C. § 105(a). Put differently, the peculiar facts presented herein cause this case to more closely resemble those cases wherein jurisdiction over non-debtor persons or entities has been taken under 11 U.S.C. § 105(a), because the activities of the non-debtors so significantly impact upon a debtor's reorganization effort that to decline jurisdiction would permit the non-debtors to unduly pressure the debtor or, alternatively, to effectively thwart any rehabilitation. See *In re F.T.L., Inc.*, 152 B.R. 61 (Bankr.E.D.Va.1993); *In re Cardinal Indus. Inc.*, 109 B.R. 743 (Bankr. S.D.Ohio 1989); *In re Swann Gasoline Company*, 62 B.R. 13 (Bankr.E.D.Pa.1986); *In re Landmark Air Fund II*, 19 B.R. 556 (Bankr. N.D.Ohio 1982).

If the foregoing conclusion represents an expansive view of the jurisdictional question,

---

2. Circumstances which might give rise to the limitations under 11 U.S.C. § 105(b), in this regard, are not implicated here. *In re Memorial Estates*, 797 F.2d at 520; *In re Cassidy Land and*
Cattle Co., Inc., 836 F.2d 1130 (8th Cir.1987), cert. denied, 486 U.S. 1033, 108 S.Ct. 2016, 100 L.Ed.2d 603 (1987).

*sub judice,* then as in all such instances it is reassuring that there is nevertheless, another compelling reason why the Court reaches this result.

Were the Court to accept the Defendants argument on the jurisdictional question under 11 U.S.C. § 105(a), the Court is nevertheless convinced that the matter will arrive back here anyway. Because the Debtor is a person claiming an interest in the subject partnerships, the Debtor could no doubt intervene in the Virginia State Court receivership action as of right. The Virginia State Court receivership would then appear to be subject to ultimate removal by the Debtor pursuant to 28 U.S.C. § 1452(a), which provides as follows:

> any party may remove a claim or cause of action in a civil action other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce such governmental unit's police or regulatory power, to the district court for the district where such action is pending, if such district court has jurisdiction of such claim or cause of action under Section 1334 of this title.

While this removal would be to a federal district court in Virginia, there is a good possibility that an appropriate change in venue to the district court of this judicial district would be sought and granted in light of the fact that the Debtor and his Bankruptcy case are pending here. The Debtor correctly observes that should the District Court then refer the matter to this Court, as is likely, the matters in issue would be a core proceeding under 28 U.S.C. § 157(b)(2), or at a minimum a "related" proceeding under 28 U.S.C. § 157(c)(1). Because of the pervasive impact which the receivership portends for the Debtor, the likelihood of eventual remand to a Virginia State Court by this Court appears slim. In this regard, the Court notes that although the partnership properties are located in Washington D.C., the State Court receivership has been commenced in Virginia. While the Court takes notice of the fact that Arlington, Virginia is physically closer to the sites of the properties than Philadelphia, Pennsylvania, the choice of this forum undercuts somewhat the Defendants' arguments that close proximity to the properties is pivotal for the Court supervising the receiver; rather, it tends to suggest forum shopping.

Furthermore, the Defendants' argument that the costs attendant to a receivership supervised herein are bound to be much greater than a receivership supervised in Virginia is subject to a "catch 22" type flaw. The Defendants correctly observe that the routine aspects of the receivers duties should require little court involvement. There should correspondingly therefore be little added cost to the parties. The more significant activities of the receiver, however, would likely effect the Debtor in numerous ways that would ensure that those activities will come into play in this Court irrespective of whether they are also litigated in Virginia. Consolidation of the receivership proceeding here is therefore likely to reduce, rather than increase the parties overall costs. For all of the foregoing reasons, the Court is persuaded that the most efficient and expeditious manner of resolving this matter is for the Court to take jurisdiction of the receivership now under 11 U.S.C. § 105(a), and thereby save the Debtor (and the Defendants) from "the painful, expensive and lengthy legal odyssey" which the Debtor predicts if the Court declines jurisdiction at this time.

An appropriate Order consistent with the foregoing conclusions shall be entered herein.

### ORDER

**AND NOW,** this 27th day of February, 1995, upon consideration of the above-captioned Debtor's Amended Complaint requesting, *inter alia,* appointment of a federal receiver to oversee the administration of the above-captioned Partnership Defendants, with power to collect all debts of the Partnership Defendants, and to administer, oversee and convert the partnership assets for the benefit of the Debtor and for the above-captioned individual defendants and for the creditors of the Partnership Defendants, and after a hearing held on January 26, 1995, it is hereby

**ORDERED** that the Debtor's request for the appointment of a federal receiver empowered with the above enumerated powers of collection and administration shall be grant-

ed. It is further **ORDERED** that the Debtor and the Defendants are directed to confer regarding a mutually acceptable person or entity to serve as the receiver, and, if a person or entity is agreed upon, to immediately submit that person or entity's name to the Court for approval and appointment. If the parties are unable to agree, the Debtor and the Defendants shall submit separate lists of suggested persons or entities for the Court's consideration within two weeks of the date this Order is entered.